UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.   CASE NO: 2:17-cr-133-FtM-38MRM

OSCAR GARCIA-CHAGALA

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendant Oscar Garcia-Chagala's Motion to Vacate (Doc. 17), filed on November 30, 2017. The Government filed its Response in Opposition (Doc. 23) on December 14, 2017. The matter is ripe for review.

## **BACKGROUND**

Garcia-Chagala faces a one count indictment for violating 8 U.S.C. § 1326(a) by being an alien in the United States who had been previously deported, excluded, and removed and who did not receive consent to reapply for admission. (Doc. 1 at 1-2). On November 16, 2017, United States Magistrate Judge Carol Mirando held a full detention hearing in this matter that lasted nearly an hour and included testimony from Garcia-Chagala's wife, Maribel Jaimez, as well as argument by both parties. (Docs. 13, 14, 17 at 5). Upon consideration, Judge Mirando ordered Garcia-Chagala detained pending trial. (Doc. 14).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

In her decision, Judge Mirando relied on the Government's proffer, which included the fact that Garcia-Chagala had previously been deported from the United States in 2006 and had not been given permission to return. (Doc. 14 at 2). Judge Mirando also relied on the nature and circumstances of the of the offense, including that Garcia-Chagala was a citizen of Mexico, that he had previously been charged with illegal re-entry to the United States, that he has an immigration detainer lodged against him, the possibility that Garcia-Chagala will be removed from the United States if released, that his immigration status precludes his legal employment in the United States, and the fact that he has strong ties to Mexico, where his parent and siblings live. (Doc. 14 at 2). Finally, Judge Mirando noted that although Jaimez and Garcia-Chagala's children are American citizens, and that he had lived in the United States for approximately six years, his appearance could not be reasonably assured because Jaimez testified that she abided Garcia-Chagala's improper residence in the United States prior to his apprehension. (Doc. 14 at 2).

**STANDARD**

When requested, the district court must promptly undertake an evaluation of the propriety of a magistrate judge's pre-trial detention order. *See* 18 U.S.C. § 3145(b); *see also United States v. Garcia–Enriquez*, No. 2:15–CR–95–FTM–38MRM, 2015 WL 5159129, *2 (M.D.Fla. Sept. 2, 2015). A district court reviews de novo a magistrate judge's pre-trial release order. *U.S. v. Megahed*, 519 F.Supp.2d 1236, 1241–1242 (M.D.Fla.2007) (citing *U.S. v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir.1985)). Review by the district court contemplates an "independent consideration of all facts properly before it," *Megahed*, 519 F.Supp.2d at 1241 (citing *U.S. v. Gaviria*, 828 F. 2d 667, 670 (11th Cir. 1987) (citing *Hurtado*, 779 F.2d at 1480–81)). If the district court concludes after a careful

review the magistrate judge's findings of facts based on both the parties' papers and the evidence presented at the detention hearing, and the magistrate judge correctly applied the law, "[t]he court may then explicitly adopt the magistrate's pre-trial [release] order." *U.S. v. King*, 849 F.2d 485, 490 (11th Cir.1988). However, if necessary to the resolution of an essential issue of fact, the district court may marshal further evidence by convening a hearing. *Megahed*, 519 F.Supp.2d at 1242.

## DISCUSSION

Garcia-Chagala objects to Judge Mirando's Detention Order on the grounds that (1) the existence of an immigration detainer does not prohibit pretrial release; (2) that it was error for Judge Mirando to rely on evidence of the immigration detainer and possible deportation in arriving at her decision to detain Garcia-Chagala pending trial; and (3) that the Court has inherent supervisory power to enforce its detention order.

The Court will first confront the issue relating to the immigration detainer. An immigration detainer is a notice issued by federal immigration officials to other law enforcement agencies. 8 C.F.R. § 287.7(a). It advises such agencies that have taken an undocumented immigrant into custody that the immigration official seeks custody upon release for the purpose of arrest and removal. *Id.*; Christopher N. Lasch, *Federal Immigration Detainers After Arizona v. United States*, 46 Loy. L.A. L. Rev. 629, 675 (2013).

Courts within the Eleventh Circuit have found that the existence of an immigration detainer does not presumptively establish the propriety of pretrial detention. *United States v. Blas*, No. CRIM. 13-0178-WS-C, 2013 WL 5317228, at *4 n. 9 (S.D. Ala. Sept. 20, 2013); *see also United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1132

(M.D. Fla. 2015). Nevertheless, the law is clear that it can be considered as a factor in a court's detention decision. See *United States v. Alverez-Lopez*, No. 2:14-CR-45-FTM-38CM, 2014 WL 2563646, at *4 (M.D. Fla. June 6, 2014); *see also U.S. v. Al'Sagga*, 2014 WL 252035, *3 (S.D. Fla. January 7, 2014). This makes sense because of the incentive it provides for a defendant to flee should pretrial release be granted.

Still, Garcia-Chagala attempts to redirect the findings of courts that have considered the presence of immigration detainers in the past by pointing to language inserted into the form language of the document in March 2017, and present in this case. Now, the immigration detainer contains a provision that states it "arises from [Department of Homeland Security] authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release . . . or other matters." (Doc. 17-1). But Garcia-Chagala's argument is a non-starter because an immigration detainer is merely an administrative document. On its face, the language of such a document cannot change a legal calculus. Moreover, the Court does not discern any change in the law that would merit breaking with the past findings of its sister courts. It will thus decline Garcia-Chagala's overture to do so.

Next, Garcia-Chagala argues that the potential of his removal from the United States upon release should not have played into the merits of his detention. He is correct. Federal law enforcement may take two paths of enforcement when it finds that an individual is present in the United States without authorization after a previous removal. On the one hand, it may immediately seek removal. 8 U.S.C. § 1227(a)(1)(B). On the other, it may pursue criminal prosecution. *Id.* at § 1326(a). Through these options,

Congress has granted the Executive Branch, and specifically the Department of Justice, a measure of discretion in its enforcement of the laws.

When prosecution is chosen, the individual may not be removed until after the date he or she is "released from detention or confinement." *Id.* at § 1231(a)(1)(B)(iii). The Eleventh Circuit has found this to preclude removal until the individual is fully released for a crime with which he is charged. *Themeus v. U.S. Dep't of Justice*, 643 F. App'x 830, 833 (11th Cir. 2016). Similarly, courts within the Eleventh Circuit have found the provision to include "person[s] [that have] been released subject to conditions of pretrial supervision . . . because [they are] subject to restraints not shared by the public generally that significantly confine and restrain [their] freedom." *Blas*, 2013 WL 5317228, at *5 (internal citation omitted). Thus, to the extent that Garcia-Chagala would face removal upon pretrial release, it would be improper.

Nevertheless, the Court need not opine on the merits of its inherent supervisory authority to enforce its detention order in the realm of potential removal upon release because it finds pretrial detention to be warranted. The Bail Reform Act of 1984 permits a district court to grant or deny detention to a defendant after indictment pending trial. *See* 18 U.S.C. § 3142(a). This decision hinges on whether "any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." *Id.* at § 3142(f). Where, as here, the Government argues that an individual is a flight risk, it must provide evidence to that effect that satisfies the preponderance of the evidence standard. *King*, 849 F.2d at 489. When weighing that evidence, the Court may consider a number of factors, including

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a

> violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c) (1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). Where, as here,

The Court now turns to the merits of detention. First, though the offense Garcia-Chagala is charged with is not one of violence, a violation of 21 U.S.C. § 1591, a Federal crime of terrorism, or a crime involving a minor victim, controlled substance, firearm, explosive, or destructive device, it *is* one of elusion. Garcia-Chagala allegedly re-entered the United States without authorization after being removed. He then lived in the United

States for six years until he was apprehended. These actions are necessarily volitional, and they demonstrate an ability and intent to evade detection by authorities. This is consequential, because if Garcia-Chagala was willing to attempt to evade detection prior to apprehension, he may attempt to evade authorities again now that he faces the possible consequences of his actions.

Garcia-Chagala, though, attempts to rebut this finding by mounting two seemingly contradictory arguments. On the one hand he argues that "the charge of [i]llegal [r]e-[e]ntry [should] be treated like that of any other offense." (Doc. 17 at 14). On the other, he argues that the Court cannot use the "'nature of this offense' as a 'detention factor.'" (Doc. 17 at 14). He is half correct. While the charge in this case should be treated like any other, there is ample support for the consideration of the nature of an illegal-re-entry offense, including a defendant's immigration status and surrounding circumstances, as a factor in a detention analysis. *See United States v. Lozano*, No. 1:09CR158-WKW, 2009 WL 3052279, at *2 (M.D. Ala. Sept. 21, 2009); *see also United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001). Therefore, because Garcia-Chagala's undocumented status, his entry into the United States after previous removal, and his residence in Southwest Florida over a period of years are all logical antecedents to the charge levied against him, they may be properly considered here.

Second, the weight of the evidence also bears against Garcia-Chagala's release. He is a citizen of Mexico that was previously identified by United States Immigration and Customs Enforcement ("ICE") and removed in 2006. He did not have authorization to re-enter the United States. Yet, in approximately 2011 he did just that. In October 2017, he was arrested on these grounds. ICE has used his fingerprints to verify his identity.

Garcia-Chagala casts these findings as factors that apply in "virtually every single "[i]llegal [r]e-[e]ntry case." (Doc. 17 at 14). That may be. Even so, it does not change the fact that the evidence presented against him is substantial. And because he presents no evidence to contest that finding, his argument cannot carry the day.

Third, Garcia-Chagala's history and characteristics further weigh against pretrial release. Though he was born in Mexico and has a parent and siblings there, he has left them on multiple occasions to enter the United States without authorization. This has led to him being removed at least once in the past. At some point, Garcia-Chagala married Jaimez and produced children that now reside in Southwest Florida. But, because of his immigration status, he has never been able to work here. 8 U.S.C. § 1324(a)(1)(A). Moreover, because of his immigration history ICE has lodged an immigration detainer against him. (Doc. 17-1). It has also issued a Notice of Intent/Decision to Reinstate its prior order of removal entered against him. Thus, after this case is concluded, he faces the possibility of being removed again. Taken together, the repeated nature of Garcia-Chagala's alleged conduct, as well as his willingness to evade authorities in furtherance of the ability to remain in the country, undermines an argument that he would appear in Court when required if released.

Garcia-Chagala argues that this is not the case because he has strong ties to Southwest Florida given that Jaimez is an American citizen that resides here with his children, and because Jaimez is gainfully employed and capable of supporting the family even though he cannot legally work. The record also reveals that he has a pending immigration case to adjust his legal status. These arguments are insufficient to merit release. For one thing, while the pull of family is certainly strong, Garcia-Chagala has

familial ties in Mexico and has allegedly departed from them on multiple occasions to return to the United States. In addition, though Garcia-Chagala has hired counsel regarding his immigration status, that matter is not the subject of this case and it does nothing to stave off the possibility that he may circumvent his potential conviction and/or removal in the future by fleeing now.

Lastly, while the record does not indicate that Garcia-Chagala is a danger to the community, the Court finds that no condition or combination of conditions will reasonably assure his appearance. The only condition that Garcia-Chagala argues for is to be released into Jaimez's custody. The Bail Reform Act permits this so long as the person designated for custody "agrees to assume supervision and to report any violation of a release condition to the court, [and] the designated person is able reasonably to assure the judicial officer that the person will appear as required . . . . " 18 U.S.C. § 3142(c)(1)(B)(i). Jaimez, however, does not satisfy that standard because of her testimony that she knew of Garcia-Chagala's allegedly undocumented status while she lived with him. Given that she was willing to overlook his alleged unlawful activities then, she lacks the credibility to provide reasonable assurances of his appearance now.

## CONCLUSION

In sum, the Court agrees with Judge Mirando's finding that a preponderance of the evidence shows Garcia-Chagala is a flight risk, and that no condition or combination of conditions of bond will assure his appearance at future Court proceedings. Thus, the Court finds the Garcia-Chagala should be detained and that Judge Mirando's decision should be affirmed.

Accordingly, it is now

**ORDERED:**

1. Garcia-Chagala's Motion to Vacate (Doc. 17) is **DENIED**.

2. Judge Mirando's Detention Order (Doc. 14) is **AFFIRMED**.

**DONE AND ORDERED** at Fort Myers, Florida, this December 20, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record